# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF FLORIDA
## GAINESVILLE DIVISION

IRIS CARNEGIE, on behalf of herself,
and those similarly situated,

                                               **Case No. 1:21-cv-58-AW-GRJ**

          **Plaintiff,**

vs.

**AMAZON.COM, INC; AMAZON
LOGISTICS, INC.; AMAZON.COM
SERVICES, INC.; OPTIMAL US
LOGISTICS, INC.**


          **Defendants.**

_____/

## FIRST AMENDED COMPLAINT[1] AND DEMAND FOR JURY TRIAL

Plaintiff, IRIS CAERNEGIE, individually and on behalf of all others similarly situated individuals (collectively, "Plaintiffs"), by and through undersigned counsel, sue Defendants AMAZON.COM, INC., ("ACI") a Foreign for Profit Corporation, AMAZON LOGISTICS, INC., ("ALI") a Foreign for Profit Corporation, AMAZON.COM SERVICES, INC. ("ACS"), a Foreign for Profit Corporation (ACI, ALI, and ACS are hereinafter collectively referred to as "Amazon"), and OPTIMAL US LOGISTICS, INC. ("Optimal" together with Amazon, "Defendants") on a collective basis pursuant to the Fair Labor Standards Act, 29 U.S.C. §§ 201-219, and states as follows:

## JURISDICTION AND VENUE

---

[1] Plaintiff files this First Amended Complaint upon written consent from all Defendants, pursuant to Fed. R. Civ. P. 15(a)(2).

1.      Jurisdiction in this Court is proper as the claims are brought pursuant to the Fair Labor Standards Act, as amended (29 U.S.C. § 201, *et seq*., hereinafter called the "FLSA") to recover unpaid back wages, an additional equal amount as liquidated damages, and reasonable attorneys' fees and costs.

2.      This Court has jurisdiction over Plaintiff's FLSA claims pursuant to 28 U.S.C. §1331, arising under 29 U.S.C. §216(b).

3.      Venue is proper in this judicial district because at least one of Defendants maintains offices within this judicial district and the events giving rise to Plaintiff's claims occurred in this judicial district.

## PARTIES

4.      At all times relevant hereto, Plaintiff was a resident of Gainesville, Florida which is within the area of this judicial district..

5.      At all times relevant hereto, Plaintiff handled goods that had moved in interstate commerce on a daily basis delivering packages to customers of Amazon.

6.      At all times relevant hereto, Plaintiff has been a current or former "employee" of Defendants as that term is defined by the FLSA, 29 U.S.C. §201 *et seq*, as he was suffered and permitted to work delivering packages to Amazon customers in connection with their purchases from Amazon.com.

7.      The putative class members include all non-exempt delivery associates or delivery drivers who delivered packages for Amazon through Optimal, at any location within the United States.

8.      Defendant ACI is a foreign corporation that operates and conducts business in this county, as well as nationwide, and is therefore within the jurisdiction of this Court.

9.      ACI has been served with process.

10.     Defendant ALI is a Foreign Corporation that operates and conducts business in this county, as well as nationwide, and is therefore within the jurisdiction of this Court.

11.     ALI has been served with process.

12.     Defendant ACS is a foreign corporation that operates and conducts business in this county, as well as nationwide, and is therefore within the jurisdiction of the Court.

13.     ACS has been served with process.

14.     Defendant, OPTIMAL, is a Foreign Profit Corporation with its principal office at 4600 140 Ave N, Suite 180, Clearwater, Florida 33762.

15.     OPTIMAL operates and conducts business in the Gainesville area and is therefore, is within the jurisdiction of this Court.

16.     OPTIMAL has been served with process.

17.     On information and belief, OPTIMAL provides delivery associates to Amazon as a Delivery Service Provider.

18.     On information and belief, Amazon contracts with and/or otherwise directs OPTIMAL to deliver Amazon packages from Amazon Delivery Stations located

in Gainesville, Florida and other locations.

**FLSA COVERAGE**

A.    *Employment Relationship*

19.    The FLSA defines the term "employer" to broadly include "any person acting directly or indirectly in the interest of an employer in relation to any employee". 29 U.S.C. 203(d).

20.    On information and belief, Defendant Amazon.com Inc., is the parent corporation of Amazon.com Services, Inc. (formerly Amazon.com, LLC), as well as Amazon Logistics, Inc., and together they operate one of the largest, if not the largest, ecommerce and logistics company in the world.

21.    Through the operation of the Amazon.com website (www.amazon.com) customers throughout the United States can and do purchase goods and/or materials which are then shipped throughout the United States to each customer's address.

22.    In addition, Amazon is in the business of providing delivery service to customers, and that is the service that delivery drivers, such as Plaintiff, and those similarly situated, provide.  The drivers' services are fully integrated into Amazon's business and managed by Amazon due to the level of control and oversight utilized by Amazon.

23.    To ensure the highest customer service, satisfaction and companywide uniformity, Amazon dictated and directly managed Plaintiff's employment with local delivery drivers' or driver associates' ( the term used by Amazon) employment  with

local delivery companies such as OPTIMAL , including, but not limited to:

    a. Requiring Plaintiff to submit to an Amazon background check and participating in the decision to hire delivery drivers;

    b. Training all the delivery drivers;

    c. Dictating the manner and type of clothing to wear;

    d. Determining the make, model and style of delivery van to be used while delivering packages;

    e. Determining the location where Amazon packages are to be unloaded and loaded for delivery;

    f. Monitoring the performance of pre-trip and post-trip delivery van inspections;

    g. Determining where, when, how, and in what order packages are to be delivered to Amazon customers dictating the exact schedule to be followed;

    h. Controlling the method and manner of troubleshooting delivery issues by requiring delivery drivers to report problems delivering packages directly to Amazon;

    i. Tracking delivery performance including but not limited to the number hours driven, the number of packages delivered each day, the location of delivery drivers at any given time, and the efficiency of the deliveries as reported through Amazon handheld devices or the Amazon Flex application for smart phones;

    j. Supervising the work of delivery drivers on a daily basis;

    k. Evaluating the performance of delivery drivers on a periodic basis in accordance with Amazon specific policies and procedures.

    l. Disciplining delivery drivers up to and including termination.

24.    Based on information and belief, OPTIMAL was organized for the business purpose of providing local delivery or last mile delivery services to Amazon.

25.    Based on information and belief, OPTIMAL existed for the business

purpose of providing local or last mile delivery services to Amazon as an integral part of the Amazon business operation for the purpose of delivering Amazon products directly to their customers.

26.     Stated differently, OPTIMAL simply provided a delivery driver labor force to Amazon, to further Amazon's core business objective of providing delivery service to Amazon customers.

27.     On information and belief, OPTIMAL was directly and solely dependent on its delivery contract with Amazon.

28.     On information and belief OPTIMAL was solely dependent on payments made by Amazon to make regularly scheduled payroll to the Plaintiff and similarly situated Drivers

29.     Plaintiff and similarly situated delivery drivers were dependent on Amazon, at a minimum, because Amazon provided: (i) all of the packages to deliver as part of its core business; (ii) delivery instructions including when, where, how and in what order to deliver the packages; and (iii) payment of wages through Amazon's payments under the delivery contract with OPTIMAL.

30.     Based on the foregoing, Amazon.com, Inc., is an employer as defined under the FLSA.

31.     Based on the foregoing, Amazon.com Services, Inc., is an employer as defined under the FLSA.

32.     Based on the foregoing, Amazon Logistics, Inc., is an employer as defined

under the FLSA.

33. Based on the foregoing, OPTIMAL is an employer as defined under the FLSA.

34. Defendants are employers as defined under the FLSA.

35. "To be 'employed' includes when an employer 'suffer[s] or permit[s] [the employee] to work.'" *See Freeman v. Key Largo Volunteer Fire & Rescue Dept., Inc.,* 494 Fed. Appx. 940, 942 (11th Cir. 2012) cert. denied, 134 S.Ct. 62 (U.S. 2013).

36. Plaintiff and the putative class members were employed by Defendants.

37. Specifically, Plaintiff and the putative class members suffered and were permitted to work delivering Amazon packages on behalf of and for the sole benefit of Amazon.

38. Defendants also jointly employed Plaintiff and all other similarly situated delivery drivers

39. At all times material to this action Defendants directly or indirectly, controlled and directed all aspects of the day to day employment of Plaintiff including: (i) timekeeping; (ii) payroll; (iii) disciplinary actions; (iv) employment policies and procedures; (v) scheduling and hours; (vi) terms of compensation; (vii) human resources; (viii) hiring and firing; (vii) working conditions; and (viii) manner and method of such drivers' performance of their duties.

**B.** *Enterprise and Individual Coverage*

40. "The [FLSA] requires an employer to pay overtime compensation to an

hourly worker if the employee can establish individual or enterprise coverage." *Silver v. Dr. Neal Krouse, D.O., P.A.*, 2007 WL 4098879 *2 (S.D. Fla. Nov. 16, 2017)(*citing Thorne v. All Restoration Svcs., Inc.*, 448 F.3d 1264, 1265 (11th Cir. 2006).

41.     Amazon.com, Inc. is an enterprise as defined within section 3(r)(1) of the FLSA.

42.     Amazon Logistics, Inc., is an enterprise as defined within section 3(r)(1) of the FLSA.

43.     Amazon.Com Services, Inc., are each an enterprise as defined within section 3(r)(1) of the FLSA.

44.     Amazon.com, Inc., Amazon Logistics, Inc., and Amazon.com Services, Inc., are together an enterprise as defined with section 3(r)(1) of the FLSA.

45.     OPTIMAL is an enterprise as defined within section 3(r)(1) of the FLSA.

46.     The Defendants are an enterprise as defined within section 203(r)(1) of the FLSA.

47.     FLSA enterprise coverage requires that an enterprise have "employees engaged in commerce or in the production of goods for commerce," or have "employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce." 29 U.S.C. § 203(s)(1)(A)(emphasis added); *See Polycarpe. V. E&S Landscaping Service, Inc.*, 616 F.3d 1217, 1222-26 (11th Cir. 2010).

48.     Additionally, the enterprise must have greater than $500,000 in "annual gross volume of sales made or business done." *Daniel v. Pizza Zone Italian Grill & Sports*

*Bar, Inc.*, 2008 WL 793660, at *2 n.6 (M.D. Fla. Mar. 24, 2008).

49.     Because today nearly all goods and materials are moved in or produced via interstate commerce, "virtually every business meeting the annual gross value requirement" is subject to enterprise coverage. *Id*.

50.     At all material times, Defendants have been an enterprise in commerce or in the production of goods for commerce and have or had at least two employees that handle or work on goods or materials that have been moved in or produced for commerce.  29 U.S.C. § 203(s).

51.     Defendants provided the last mile or local delivery of products and goods that are purchased from Amazon.com, the leading online retailer in the United States.

52.     Defendants are engaged in commerce, and Plaintiff and all those similarly situated regularly handled goods or materials that had been moved in or produced for commerce, when delivering orders purchased on www.amazon.com.

53.     At all times relevant hereto, each Defendant had an annual gross volume of sales or did business of more than $500,000.00 per year.

54.     Collectively, at all times relevant hereto, Defendants had an annual gross volume of sales or did business of more than $500,000.00 per year.

55.     Therefore, at all material times relevant to this action, each Defendant was an enterprise covered by the FLSA, and as defined by 29 U.S.C. §203(r) and 203(s).

## WAGE VIOLATIONS

56.     Defendants violated the FLSA by failing to pay Plaintiff and the putative

class members time and one-half for each hour worked in excess of 40 hours per workweek.

57.     Further, Defendants have improperly calculated Plaintiff and the putative class members' regular rate resulting in further miscalculation of Plaintiff and the putative class members' overtime pay.  Specifically, Plaintiff and the putative class members should have received overtime compensation at a rate not less than one and one-half times their true regular rate.

58.     Plaintiff and the putative class members were initially hired and paid under a purported day rate plan—that is, they were supposed to be paid for each day worked regardless of the number of hours worked each day.  *See* 29 C.F.R. §778.112.

59.     Defendants violated the day rate regulation in a number of different ways. Defendants failed to pay Plaintiff and the putative  class members overtime at 1.5 times their regular rate for each hour worked over 40 in a workweek, by failing to include any overtime premium at all.  Also, Defendants paid Plaintiff and putative class members the day rate in addition to other forms of compensation, which are not in compliance with the day rate provision of 29 C.F.R. § 778.112.  These other forms of compensation are not in compliance with the day rate provision of 29 C.F.R. § 778.112 and ultimately result in a miscalculation of Plaintiff and the putative class members' regular rate and resulting overtime compensation. These other forms of compensation (rescue pay, production bonus, quality bonus, safety bonus, and others) may vary by name and amount, but nevertheless have the same overall effect of invalidating Defendants

attempt to categorize and compensate Plaintiff and the putative class members under the day rate provision permitted by 29 C.F.R. §778.112.

60.     Defendants also violated the FLSA by permitting and encouraging Plaintiff and the putative class members to perform pre-trip and post-trip work duties off the clock—that is, work without pay.

61.     Defendants further violated the FLSA by deducting meal periods from Plaintiff and the putative class members' daily hours worked, despite knowing that Plaintiff and the putative class members routinely worked throughout their designated meal periods.

62.     Defendants failed to keep accurate records of the hours Plaintiffs, and those similarly situated worked each week.

63.     At all times relevant to this action, Defendants failed to comply with the FLSA because Plaintiff and the putative class members performed services for Defendants for which no provisions were made by Defendants to properly pay Plaintiff, and those similarly situated, for all hours worked at the correct prevailing rate.

## <u>CLASS DEFINITIONS</u>

64.     Plaintiff brings this lawsuit pursuant to section 216(b) of the FLSA as a collective action on behalf of herself and the following class:

   a.     All delivery drivers or driver associates who worked for the Defendants to provide last mile delivery services at any location, within the three year period preceding the filing of the original Complaint (the "Class").

## FACTUAL ALLEGATIONS

65.     OPTIMAL is one of many contractors who worked for and are under the control of Amazon delivering Amazon's goods throughout the country.

66.     Plaintiff and similarly situated employees worked for Defendants delivering items purchased from Amazon to the customers who purchased said items.

67.     At all relevant times, Amazon has been associated with and/or related to OPTIMAL with respect to Plaintiff and other similarly situated employees within the defined Class such that they are an "employer" and a "joint employer" of Plaintiff and other similarly situated employees in that, inter alia:

     a.  Plaintiff, and similarly situated employees, submitted to an Amazon background check, whereupon Amazon dictated whether Plaintiff could be hired;

     b.  After being hired, Plaintiff and similarly situated employees were trained by Amazon personnel with some participation from the OPTIMAL personnel;

     c.  Plaintiff, and similarly situated employees, wore uniforms with Amazon branding and logos while delivering Amazon packages;

     d.  Plaintiff, and similarly situated employees, drove delivery vans that are branded with the Amazon logo;

     e.  Each morning, Plaintiff and similarly situated employees report to a warehouse operated by Amazon, where their vans are loaded with Amazon merchandise, and where they receive work instructions and direction from Amazon;

     f.  Plaintiff and similarly situated employees are required to unload Amazon packages that are transported by Amazon trucks after they arrive at the Amazon warehouse locations;

     g.  Plaintiff and similarly situated employees are provided a route sheet with the delivery locations and order of delivery already pre-

determined and planned by Amazon;

h.  Plaintiff and similarly situated employees have to report problems delivering packages directly to Amazon;

i.  On information and belief, Amazon tracks the performance and time worked of Plaintiff and similarly situated employees through the use of Amazon issued handheld devices or the Amazon Flex application for smart phones;

j.  Plaintiff and similarly situated employees are jointly supervised by Amazon in coordination with OPTIMAL;

k.  On information and belief, Amazon has procedures in place to evaluate and discipline Plaintiff and similarly situated employees, up to and including termination; and

l.  Plaintiff and similarly situated employees are economically dependent on payments made by Amazon to the local delivery contractors.

68.  Plaintiff worked for Defendants delivering items purchased from Amazon to the customers who purchased said items in the Jacksonville and Gainsville area from approximately October 2018 through approximately June 2019.

69.  Plaintiff's primary duty involved transporting goods in interstate commerce.

70.  During the course of their employment, Plaintiff and similarly situated employees regularly worked in excess of forty (40) hours in individual work weeks.

71.  Plaintiff worked, on average, 60 hours each work week.

72.  At the time Plaintiff was hired, Defendants compensated her on a purported day rate in addition to other forms of compensation.

73.  The other forms of compensation are not in compliance with the day and

job rate provisions of 29 C.F.R. §778.112 and, ultimately result in miscalculation of Plaintiff and the putative Class members' regular rate and resulting overtime compensation. These other forms of compensation (rescue pay, production bonus, quality bonus, safety bonus, and others) may vary by name and amount, but nevertheless have the same overall effect of invalidating Defendants attempt to categorize and compensate Plaintiff and the putative class members under the day rate provision permitted by 29 C.F.R. §778.112.

74. Plaintiff was required to show up to the Amazon warehouse and unload Amazon packages and then subsequently load her local delivery van with Amazon packages prior to her regularly scheduled driving shift.

75. Additionally, Plaintiff was required to complete a pre-shift and post- shift inspection of her delivery vehicle at the Amazon Warehouse before and after her regularly scheduled driving shift.

76. Plaintiff was not paid for her time unloading and loading packages, nor her time conducting pre-shift and post-shift inspections.

77. Plaintiff estimates she worked approximately 1.5 to 2 hours each day for which she was not compensated at all since she was solely paid for her driving shift.

78. However, Defendants failed to pay Plaintiff the overtime premium of one and a half times her regular rate of pay for all hours worked in excess of forty hours in individual work weeks.

79. Instead, Defendants paid Plaintiff only her purported "day rate" after

completing her route.

80.     In addition to the purported day rate that Defendants paid Plaintiff and the putative Class members, Defendants compensated Plaintiff and the putative Class members for the same type of work that they normally performed through the use of "rescue pay" or "help pay." For example, if Plaintiff and the putative Class members completed their assigned routes for the day, they would be asked to help other drivers with their incomplete routes.

81.     In order to "help" or "rescue" another driver, Plaintiff and the putative Class members would need to log out of their route, thereby stopping their time clock, and they would need to log in under the other driver's credentials in order to gain access to the route that needed to be rescued.  On information and belief, Plaintiff and the putative Class members were not credited with, or paid for, the time spent delivering the rescue packages, instead solely receiving additional "help pay" or "rescue pay" based on the number of additional packages delivered.

82.     Defendants also compensated Plaintiff and the putative Class members on a basis other than the daily rate basis for the additional forms of compensation paid by Defendants.

83.     Plaintiff and the putative Class members were hired to work a regular workweek consisting of forty (40) hours per workweek, and it was the Plaintiffs' understanding that their wages would compensate them for forty (40) hours. Further, the day rates were based upon a ten (10) hour day and approximated the hourly rates

that prevailed in the market for the type of work performed by Plaintiff and the putative Class members.

84.    Plaintiff and the putative Class members regularly worked over forty (40) hours in a workweek as delivery associates or delivery drivers.

85.    The FLSA requires non-exempt employees, like Plaintiff and the putative Class Members, to be compensated for overtime work at the mandated overtime pay rate.

86.     Plaintiff and the putative Class members were entitled to receive time and one-half compensation for all hours worked over forty (40) hours in a workweek.

87.    Defendants violated the FLSA by failing to pay their jointly employed delivery associates, including Plaintiff and the putative Class members, time and one-half for each hour worked in excess of forty (40) hours per workweek.

88.    Additionally, at some point after being hired, Defendants changed their payment structure from a day rate to an hourly rate approximating a ten hour day.  For example, Plaintiff was compensated at $140 per day, and her hourly rate converted to $14.00 per hour.

89.    During this period of time, Plaintiff, and the putative Class members, were required to work scheduled shifts that exceeded 10 or more hours per day.

90.    Plaintiffs were required to perform necessary and integral work for Defendants while not clocked in, or otherwise off the clock.

91.    On information and belief, Defendants automatically deducted

approximately one hour for lunch each day, despite Defendants' knowledge that Plaintiff, and the putative Class Members, routinely worked through their designated sixty (60) minute meal period.

92. Defendants are aware that Plaintiff and the Putative Class Members regularly worked through their meal period.

93. Plaintiff and the putative Class Members were still required to "rescue" or "help" other drivers while not clocked in.

94. Defendants' systematic deduction of the sixty (60) minute meal period from hours worked in excess of forty (40) hours per workweek deprived Plaintiff and the putative Class members of overtime pay in violation of the FLSA.

95. Plaintiff and the putative Class members were subjected to the same or a substantially similar policy, practice, or scheme of having the 60-minute meal period deducted from their on-the clock time, as described above.

96. Defendants' requirement that Plaintiff and the putative Class members "rescue" or "help" deliver other drivers packages while clocked out, deprived Plaintiff and the putative Class members of overtime pay in violation of the FLSA.

97. Plaintiff and the putative Class members were subjected to the same or a substantially similar policy, practice, or scheme of having to "rescue" or "help" other drivers while not being clocked in.

## COLLECTIVE ACTION ALLEGATIONS

98.     Plaintiff brings this lawsuit pursuant to 29 U.S.C. §216(b) as a collective action on behalf of the Class defined above.

99.     Plaintiff and the putative Class members were all local Amazon delivery drivers or driver associates and performed the same or similar job duties as one another in that they provided local delivery service at the direction and on behalf the Defendants.

100.    Further, Plaintiff and the members of the collective action were subjected to the same pay provisions, practices and policies but were not compensated at time-and-one-half for all hours worked in excess of 40 hours in a workweek.

101.    Thus, the class members are owed overtime wages for the same reasons as Plaintiff.

102.    The specific job titles or precise job responsibilities of each class member does not prevent collective treatment.

103.    All class members, irrespective of their particular job requirements, are entitled to overtime compensation for hours worked in excess of forty during a workweek.

104.    Although the exact amount of damages may vary across class members, the damages for class members can be easily calculated by a formula.

105.    The claims of all class members arise from a common nucleus of facts.

106.    Liability is based on a systematic course of wrongful conduct by

Defendants that caused harm to all class members.

107.     Defendants' failure to pay overtime compensation as required by the FLSA results from generally applicable policies or practices of failing to assure that their drivers are/were paid for all overtime hours.

108.     These policies and/or practices were uniformly applicable to Plaintiff and the class members.

109.     Application of these policies and/or practices does/did not depend on the personal circumstances of Plaintiff or those joining this lawsuit.

110.     Rather, the same policies and/or practices which resulted in the non-payment of overtime to Plaintiff applied and continues to apply to all class members, regardless of which company they were paid through.

111.     Defendants knowingly, willfully, or with reckless disregard carried out its illegal pattern or practice of failing to pay overtime compensation with respect to Plaintiffs and the class members.

112.     Defendants did not act in good faith or reliance upon any of the following in formulating its pay practices: (a) case law, (b) the FLSA, 29 U.S.C. § 201, et seq., (c) Department of Labor Wage & Hour Opinion Letters or (d) the Code of Federal Regulations.

113.     During the relevant period, Defendants violated § 7(a)(1) and § 15(a)(2), by employing employees in an enterprise engaged in commerce or in the production of goods for commerce within the meaning of the FLSA as aforesaid, for one or more

workweeks without compensating such employees for their work at a rate of at least the time-and-one-half for all hours worked in excess of 40 hours in a work week.

114.　Defendants have acted willfully in failing to pay Plaintiffs and the class members in accordance with the law.

115.　Defendants have failed to maintain accurate records of Plaintiffs' and the class members' work hours in accordance with the law.

116.　Federal law mandates that an employer is required to keep for three (3) years all payroll records and other records containing, among other things, the following information:

 a. The time of day and day of week on which the employees' work week begins;

 b. The regular hourly rate or pay for any workweek in which overtime compensation is due under Section 7(a) of the FLSA;

 c. An explanation of the basis of pay by indicating the monetary amount paid on a per hour, per day, per week, or other basis;

 d. The amount and nature of each payment which, pursuant to section 7(e) of the FLSA, is excluded from the "regular rate";

 e. The hours worked each workday and total hours worked each workweek;

 f. The total daily or weekly straight time earnings or wages due for hours worked during the workday or workweek, exclusive or premium overtime compensation;

 g. The total premium for overtime hours. This amount excludes the straight-time earnings for overtime hours recorded under this section;

 h. The total additions to or deductions from wages paid each pay period including employee purchase orders or wage assignments;

     i.   The dates, amounts, and nature of the items which make up the total additions and deductions;

     j.   The total wages paid each pay period; and

     k.   The date of payment and the pay period covered by payment.

29 C.F.R. §§ 516.2, 516.5.

117.    Defendants have not complied with the federal law and have failed to maintain such records with respect to Plaintiffs and the Class.

118.    Because Defendants' records are inaccurate and/or inadequate, Plaintiff and class members can meet their burden under the FLSA by proving that they, in fact, performed work for which they were improperly compensated, and produce sufficient evidence to show the amount and extent of the work "as a matter of a just and reasonable inference." *See, e.g., Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 687 (1946).

**COUNT I**
**VIOLATION OF 29 U.S.C. §207**
**OVERTIME COMPENSATION**

119.    Plaintiff re-alleges and reincorporates paragraphs 1 through 118 as if fully set forth herein.

120.    This Count arises from Defendants' violation of the FLSA for their failure to pay the Class, including Plaintiff, one and a half times their regular rate of pay for all time worked in excess of forty (40) hours in a work week.

121.    Defendants directed Plaintiff to work, and Plaintiff did work, in excess of forty (40) hours in individual workweeks within the three (3) years prior to filing this

lawsuit.

122.     The Class was also directed to work in excess of forty (40) hours in individual workweeks within the three (3) years prior to filing this lawsuit.

123.     Plaintiff, and the Class, were entitled to be paid overtime wages for all time worked in excess of forty (40) hours in individual workweeks.

124.     Defendants did not pay Plaintiffs, and the Class, overtime wages for all time worked in excess of forty (40) hours in individual workweeks.

125.     Defendants' failure to pay Plaintiff, and the Class overtime wages for all time worked in excess of forty (40) hours in individual workweeks was a violation of the FLSA.

126.     Defendants failed to maintain proper time records as mandated by the FLSA.

127.     Defendants' actions were willful and/or showed reckless disregard for the provisions of the FLSA as evidenced by its failure to compensate Plaintiff and the Class at the statutory rate of one and one-half times Plaintiff's regular rate of pay for the hours worked in excess of forty (40) hours per week when they knew, or should have known, such was, and is due for Plaintiffs' work for Defendants.

128.     Defendants have failed to properly disclose or apprise Plaintiff and the Class of their rights under the FLSA.

129.     Due to the intentional, willful, and unlawful acts of Defendants, Plaintiffs suffered, and continues to suffer, damages and lost compensation for time worked over

forty (40) hours per week, plus liquidated damages.

130.    Plaintiffs are entitled to an award of reasonable attorneys' fees and costs

pursuant to 29 U.S.C. §216(b).

WHEREFORE, Plaintiff prays for a judgment against Defendants as follows:

a.    That the Court determine that this action may be maintained as a collective action pursuant to Section 216(b) of the FLSA;

b.    A judgment in the amount of all unpaid overtime wages owed to Plaintiff, and the Class;

c.    Liquidated damages in the amount equal to the unpaid wages for Plaintiff, and the Class;

d.    Reasonable attorneys' fees and costs of this action as provided by the FLSA;

e.    Such other and further relief as this Court deems appropriate and just.

## JURY DEMAND

Plaintiff demands trial by jury on all issues so triable as a matter of right by jury.

DATED this 24th day of September, 2021.

Respectfully Submitted,

*/s/ Andrew R. Frisch*
ANDREW R. FRISCH
FL BAR NO. 027777
AFrisch@forthepeople.com
PAUL M. BOTROS
FL BAR NO. 0063365
PBotros@forthepeople.com
**MORGAN & MORGAN, P.A.**
8151 PETERS ROAD, SUITE 400
PLANTATION, FL 33324
T: (954) WORKERS;  F:  (954) 327-3013
*Trial Counsel for Plaintiff and the Putative Class*